**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD AUGUGLIARO,** | : | |
| Plaintiff | : | **CIVIL ACTION NO. 3:04-1429** |
| v. | : | **(CONABOY, D.J.)** |
| | : | **(MANNION, M.J.)** |
| **JO ANNE B. BARNHART,** **Commissioner of Social Security,** | : | |
| | : | |
| Defendant | : | |

# REPORT AND RECOMMENDATION

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Social Security Disability Insurance Benefits, ("DIB"), under Title II of the Social Security Act, ("Act"). 42 U.S.C. §§ 401-433.

## I. Procedural Background

The plaintiff filed his application for benefits on April 2, 2002, in which he alleged that he had become disabled on January 30, 1992 due to left shoulder, right leg, and lower back pain, as well as depression. (TR. 14-15, 75,107).

After his claim was denied, (TR. 54, 64-67), the plaintiff's application eventually came on for a hearing before an administrative law judge, ("ALJ"), on April 3, 2003. (TR. 28-53). The plaintiff was represented at his hearing

before the ALJ by the same counsel who is representing him in this appeal. (TR. 28).  In addition to the plaintiff's testimony, the ALJ heard the testimony of James Paddock, a Vocational Expert (VE).  (TR. 49-52).

On May 5, 2003, the ALJ issued a decision in which he found that the plaintiff met the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and was insured for benefits through December 31, 1997; the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability; the plaintiff had a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. §404.1520(b); those medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix I, Subpart P, Regulation No. 4.

The ALJ found the plaintiff's allegations regarding his limitations not totally credible for the reasons set forth in the body of the ALJ's decision; the ALJ stated to have considered all of the medical opinions in the record regarding the severity of the plaintiff's impairments (20 C.F.R. §404.1527); during the period of January 1992 through December 31, 1997, the plaintiff had the residual functional capacity (RFC) for light or sedentary work as defined at the hearing, provided that his left arm was not used for any overhead work and there was no requirement for lifting more than 5 pounds with the left hand and arm; the plaintiff was unable to perform any of his past relevant work (20 C.F.R. §404.1565); during the relevant time period, the plaintiff was a "younger individual between the ages of 45 and 49" (20 C.F.R.

§404.1563); he had a high school education (20 C.F.R. §404.1564); transferability of skills was not an issue in this case (20 C.F.R. §416.967); during the period from January, 1992, through December 31, 1997, the plaintiff had the RFC to perform a significant range of light work (20 C.F.R. § 416.967); although the plaintiff's exertional limitations did not allow him to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there were a significant number of jobs in the national economy that he could have performed; and, the plaintiff was not under a "disability," as defined in the Social Security Act, at any time during the period of January 1992 through December 31, 1997 (20 C.F.R. §404.1520(f)). (TR. 20-21).

The plaintiff filed a request for review of the ALJ's decision. (TR. 9-10). On May 5, 2004, the Appeals Council concluded that there was no basis upon which to grant the plaintiff's request for review. (TR. 5-7). Thus, the ALJ's decision stood as the final decision of the Commissioner. Currently pending before the court is the plaintiff's appeal of the decision of the Commissioner of Social Security filed on July 1, 2004. (Doc. No. 1).

**II. Disability Determination Process**

A five step process is required to determine if an applicant is disabled for purposes of social security disability insurance. The Commissioner must sequentially determine: (1) whether the applicant is engaged in substantial gainful activity; (2) whether the applicant has a severe impairment; (3)

whether the applicant's impairment meets or equals a listed impairment; (4) whether the applicant's impairment prevents the applicant from doing past relevant work; and (5) whether the applicant's impairment prevents the applicant from doing any other work. See 20 CFR § 404. 1520.

The instant action was ultimately decided at the fifth step of the process, when the ALJ determined that for the period of January 1992 through December 31, 1997, considering the plaintiff's age, educational background, work experience and RFC, the plaintiff was capable of making a successful adjustment to work that existed in significant numbers in the national economy. (TR. 19-20).

### III.  Evidence of Record

The plaintiff was born on July 14, 1948 (TR. 19, 75, 105), and has a high school education. (TR. 15, 113).  He suffered work related injuries to his left shoulder in 1980, and again in 1992, resulting in two surgical procedures to repair a rotator cuff tear. (TR. 34). His past relevant work consists of work as a union electrician for a period of approximately twenty-two (22) years; his work involved construction and heavy lifting. At age forty-four (44), in January of 1992, the plaintiff stopped working after re-injuring his left shoulder at work. (TR. 15, 33, 108).

The Plaintiff initially filed a claim for DIB in 1994. That application was apparently denied at the administrative level and he took no further appeal. TR. 34; Doc. 8, p. 3). The plaintiff reapplied in 1995 but was, once again,

denied. At the hearing, the plaintiff testified that he did not appeal the denial of the 1995 application because he was served with divorce papers around that time and he "just dropped everything." (TR. 34).

Plaintiff filed the DIB application that is the subject matter of this appeal, on April 2, 2002. He seeks disability benefits from January 30, 1992. The plaintiff's last date insured for DIB purposes was December of 1997, therefore, the plaintiff must establish that he became disabled on or prior to that date in order to be entitled to benefits. (TR. 33). He has been declared partially, permanently disabled by the Workman's Compensation Board on July 6, 1994, and receives monthly benefits from that agency. (TR. 34, 168; Doc. 8, p. 2).

Plaintiff was treated by William Krywicki, M.D., an orthopedic surgeon, from February 6, 1992, through May 12, 1995. (TR. 177-87, 195-96). Dr. Krywicki performed surgery on the Plaintiff's left shoulder in August of 1992, and again on July 1, 1999. (TR. 35; Doc. 8, p. 2).

On December 3, 1992, the plaintiff's strength was sixty percent compared to normal and his Range of Motion (ROM) had improved since the first surgery. (TR. 183). Dr. Krywicki opined that any type of activity above shoulder levels was going to be difficult. (TR. 182).  On May 6, 1993, the plaintiff was doing "quite well" from the standpoint of ROM, but his endurance strength was extremely limited, and his tolerance was no more than five minutes above head level. (TR. 181). He had not shown any major strength gain with the rehabilitation program. (TR. 180). On December 29, 1993, Dr.

Krywicki opined that the plaintiff was disabled from the type of work that he had been doing, that Plaintiff was disabled from any work at chest level or above activities, that his work capacity would be more of a sedentary nature, and that the plaintiff would be unable to do repetitive push/pull activities. (TR. 178-179).

On June 22, 1994, and again on May 12, 1995, Dr. Krywicki opined that the plaintiff was restricted to five pounds for chest level or above and repeated push, pull, or overhead activities are limited. (TR. 178, 195, Doc. 8, p. 2-3). Dr. Krywicki also opined that the plaintiff's restrictions were "permanent in nature." (TR. 178). On May 12, 1995, Dr. Krywicki again stated that the plaintiff could not return to his work as an electrician. (TR. 196).

A February 1, 1995, MRI of the left shoulder showed status post rotator cuff tear repair. There were mild degenerative changes of the acromioclavicular joint and humeral head (TR. 176), but it did not show anything out of the ordinary for someone that had undergone shoulder surgery. (TR. 195). On March 7, 1995, Plaintiff had seventy percent strength in his arm. (TR. 177).

Plaintiff was treated by Ish Kumar, M.D., a neurologist, from July 8, 1994, through April 11, 1995. (TR. 188-92). His ROM and power of the extremities were normal, straight leg raising test (SLR) was mildly positive on the right side at forty five degrees, and he had mild lumbar tenderness and spasm. (TR. 191). Dr. Kumar reviewed MRI films of the lumbar spine and diagnosed bilateral lumbar radiculopathy with degenerative disc disease and

6

mild disc herniation at L5-S1. (TR. 191). Dr. Kumar discussed treatment options with the plaintiff, including surgery. However, since the plaintiff's pain was mild, Dr. Kumar advised him to continue on back strengthening exercises. (TR. 191).

On March 2, 1995, the plaintiff complained of severe pain in the low back and both lower extremities, especially the right one. (TR. 189). SLR was positive bilaterally at thirty five degrees, ROM and power were grossly normal, but there was marked lumbar tenderness and spasm. (TR. 189). Dr. Kumar recommended another MRI. On April 11, 1995, Dr. Kumar reported that the plaintiff had disc degeneration from L3 to S1 and a bulging disc at L5-S1 that mildly encroached on the thecal sac. (TR. 188, 193). There was a probable hemangioma in the body of L2. (TR. 188). The physician discussed treatment options with the plaintiff and recommended continued back strengthening exercises. (TR. 188).

On July 6, 1994, Bernard Perlman, M.D., a Worker's Compensation Examining Physician, concluded that the plaintiff was permanently, partially disabled. (TR. 168). The plaintiff had mild atrophy of his left deltoid, mild abduction, internal and external rotation defects of the left shoulder. (TR.168).

On September 7, 1995, Cilla Marfatia, P.T., conducted a functional capacity evaluation. (TR. 203-08). Plaintiff's left shoulder pain was the main factor limiting his ability to lift but he was mostly symptom free when performing activities below shoulder level. His ROM was within functional limits for the left shoulder, elbow, and waist, and he was right dominant,

therefore, he was still able to perform most activities of daily living symptom-free. (TR. 208).

On October 4, 1995, the plaintiff reported that he took an overdose of the antidepressant Zoloft in a failed attempt to commit suicide. However, after taking the pills, he immediately called his estranged wife to inform her what he had done. He was admitted to the hospital where he reported that he had been diagnosed with depression a month earlier for which he had been prescribed Zoloft. (TR. 209, 211; Doc. 8, p. 2). The plaintiff was alert, oriented, his speech was relevant and coherent, and his sensorium was grossly intact with average intelligence but his mood was depressed. Although the plaintiff's apparently tried to commit suicide, he denied suicidal ideas, plan or intent. (TR. 209-210). Toxicology reports returned negative for any drugs, alcohol or narcotic, except for Benzodiazepine. (TR. 211).  The plaintiff was diagnosed with adjustment disorder with depressed mood. (TR. 210). He was discharged on October 12, 1995, and his prognosis was "good;" he was advised to participate in individual therapy sessions. (TR. 219-220).

The plaintiff was treated at the Department of Veterans Affairs' hospital from October 3, 1997, through September 16, 2002. (TR. 221-371, 386-502). Hospital notes dated March 22, 1996, show that the plaintiff reported to be more angry than depressed due to his marital problems and that he was not taking any medication for his depression. (TR. 474). His affect was deemed "appropriate and angry" and, although depressed, he was not severely depressed; he was spontaneous, relevant and coherent. The plaintiff was

given an appointment at the Mental Hygiene Clinic and was allowed to sign himself out on the same day. (TR. 474).

Plaintiff continued treatment for his physical impairments at the Veteran's hospital; on September 4, 1997, x-rays of his left shoulder showed no abnormalities but an MRI was recommended. (TR. 497). An October 3, 1997, MRI of the left shoulder showed an abnormality compatible with a rotator cuff tear. (TR. 496).  On July 1, 1999, the plaintiff underwent surgery on his left shoulder. (TR. 223).

On June 10, 2002, J. J. Kowalski, M.D., prepared a Psychiatric Review Technique Report (PRTF). (TR. 372-85). He concluded that there was insufficient evidence in the record to determine if Plaintiff had any mental impairments. (TR. 372).

Subsequent to the administrative hearing, Plaintiff submitted a June 16, 2003, office note from Dr. Francisco Garcia, a psychiatrist,  and a May 30, 2003, Department of Veterans Affairs' rating decision. (TR. 508-512).

Dr. Garcia diagnosed the plaintiff with post traumatic stress disorder (PTSD), service connected[1]. The plaintiff had reported that he broke a small table with a baseball bat when he was notified that had been turned down again on his DIB application. (TR. 508). The Veterans' Affairs granted the plaintiff's request for service connection for PTSD, with an evaluation of fifty percent, effective August 2, 2002. (TR. 509).

---

[1] The plaintiff had served in the Marine Corps for two years during the Vietnam Era and it was possible that he was suffering from PSTD from exposure to traumatic stressors in military service during the war (TR. 510).

9

In his application for benefits, the plaintiff stated that he lives alone in an apartment, can take care of his personal needs, pays his own bills, takes out the trash, carries two grocery bags at a time, and takes his daughter to the movies and the park. (TR. 122-24).

At the time of the administrative hearing before the ALJ, the plaintiff was fifty-four (54) years old. (TR. 32). He testified that in 1980, he fell off a scaffold and injured his left shoulder. He stated that his injured shoulder was "destroyed" because he worked with a torn rotor cuff for the twelve-year period between 1980 and 1992 . (TR. 38). He also stated that he suffered from an injury to his right knee and has developed sciatica in his low back with radiculopathy and has right shoulder tendinitis from overuse. (TR. 39).

The plaintiff further testified that he is right-hand dominant and can only lift five pounds with his left arm. (TR. 37-38). He stated that he has tendinitis in his right shoulder because he uses his right arm for everything. (TR. 39). Plaintiff drives, can walk one block, sit for one half hour, and stand for one half hour. (TR. 39-40). He testified that he was taking several medications, including Etopdolac, Cyclobenzariame, Propxyphere, Lisinopril, Buspirome and Extra Strength Tylenol. (TR. 35; Doc. 8, p. 3). He stated that he gets light headed and dizzy from his medications. (TR. 44).

The VE testified that Plaintiff's past work was considered heavy and skilled. (TR. 49). After graduating from high school in 1970, the plaintiff had joined the electricians union and studied at a union trade school for five years. (TR. 32). The ALJ asked the VE to assume a hypothetical individual with

Plaintiff's age, education, and vocational characteristics who was limited to light and/or sedentary work, provided that the left arm was not used for any overhead work and there was no requirement for lifting more than five pounds with the left hand and arm. (TR. 51). The VE testified that the hypothetical individual would be capable of performing the positions of inspector, cashier, packer, and assembler. (TR. 51).

## IV.  Discussion

In support of his appeal, plaintiff generally argues that the ALJ's decision contains factual errors, is not based upon substantial evidence, fails to provide a detailed and reasoned explanation why certain credible evidence, including plaintiff's testimony, has been rejected and that the Decision is otherwise inconsistent with the evidence.

In addition, the plaintiff argues that the ALJ did not address the plaintiff's complaints at the hearing about tendinitis on his right shoulder due to overuse, or his lack of transferable skills; specially considering that he does not have any retail job experience. (Doc. 8, p. 5).

The plaintiff's main argument is that the ALJ erred in finding his testimony not completely credible and points to portions of the medical record that could arguably justify his subjective complaints of pain. (Doc. 8, p. 10). Specifically, the plaintiff refers to Dr. Krywicki's opinion that the plaintiff was not capable of performing any work at chest level or above, and was also unable to perform repetitive push/pull activities. (TR. 179; Doc. 8, p. 11).

However, a close reading of the ALJ's Decision reveals nothing that contradicts Dr. Krywicki's opinion that the plaintiff could not return to his past relevant work as an electrician. Dr. Krywicki had been the plaintiff's treating orthopedist since 1992 and performed two surgeries on the plaintiff's left shoulder to repair a rotator cuff tear. He simply opined that the plaintiff was restricted in the performance of above chest level activities; he did not state that the plaintiff was incapable of performing any and all work. (Doc. 9, p. 14). Even the Workman's Compensation Agency deemed the plaintiff only partially disabled. (TR. 168; Doc. 9, p. 15).

With regards to the plaintiff's subjective complaints, it is well settled that testimony regarding subjective pain is entitled to great weight but only when said testimony is supported by competent medical evidence. Courts must affirm an ALJ's credibility finding unless the Plaintiff can demonstrate that the ALJ was patently wrong. See Herr v. Sullivan, 912 F.2d. 178, 182 (7th Cir. 1990).

The ALJ acknowledged that the objective medical evidence is compatible with some degree of pain and limitations but not to the extent alleged by the plaintiff. (TR. 18). The plaintiff's argument that the results of an EMG/NCV Study supports the plaintiff's subjective complains of pain is without merit. (Doc. 8, p. 7, 12). The EMG's diagnosis of radiculopathy is not, by itself, enough to render the plaintiff disabled. Mere diagnosis of an impairment, regardless of severity, does not in itself warrant a finding of total disability. The issue is whether that impairment results in a functional disability that prevents

the performance of substantial gainful activity. See Petition of Sullivan, 904 F. 2d 826, 845 (3d. Cir. 1990) (Doc. 9, p. 15).

With regards to the plaintiff's lack of experience in the retail industry, the ALJ's Decision states that since the plaintiff was considered a younger individual for the relevant time period, transferability of skills was not an issue in this case. (TR. 19, Doc. 9, p. 11). In addition, the plaintiff's lack of experience in a given field of work is irrelevant in disability determinations of younger individuals, the issue is whether that individual's functional limitations prevent the performance of substantial gainful activity. (Doc. 9, p. 12). Furthermore, the VE opined that, taking into consideration the plaintiff's functional limitations, the unskilled jobs available to him could be learned in no more than thirty days. (TR. 51; Doc. 9, p. 2).

Contrary to the plaintiff's argument that the ALJ relied on evidence from 1992 to make his Decision ignoring the progression of his impairments through the years, the ALJ summarized medical evidence spanning many years. (Doc. 8, p. 7, 11-12). The ALJ examined the plaintiff's medical records starting with his 1992 work related injury (TR. 16), and ending with the plaintiff's course of treatment for depression during 1997, and his 1999 shoulder surgery. (TR. 17). The plaintiff fails to direct our attention to any portion of the record indicating that the plaintiff's physical impairments had worsened. The plaintiff's reliance on Dr. Thomas' 2002 opinion that the plaintiff is unemployable due to limitations caused by left shoulder and back

13

pain is misplaced. Dr. Thomas issued the above opinion on October 3, 2002, in which he reports to know the plaintiff since May of 2002. Not only is Dr. Thomas' opinion largely based on the plaintiff's verbal reports, but it was also issued five years outside of the relevant time period for this case. (Doc. 9, p. 16).

The plaintiff seems to argue that the ALJ failed to thoroughly discuss his testimony regarding his pain and limitations, his inability to concentrate, the side effects of his medication and his lack of sleep, which indicates a less than comprehensive review of the record. (Doc. 8, p. 9). However, the ALJ discussed all relevant matters in his decision including the plaintiff's subjective complaints. With regards to the side effects of the plaintiff's medications, such as sleeplessness or excessive sleep, dizziness and difficulty maintaining concentration, the ALJ adequately considered and addressed those issues in the body of his decision. (TR. 17). An ALJ is not required to supply comprehensive explanations to support his acceptance or rejection of evidence. In most cases, a sentence or short paragraph will suffice. See Davis v. Comm'r of Soc. Sec., 105 Fed. Appx. 319, 2004 U.S. App. LEXIS 2004 (3d Cir. 2004). In addition, the plaintiff testified that he was prescribed narcotic painkillers starting in 2000 and then in 2002, which is outside of the time period under consideration. (TR. 35-36).

The plaintiff also argues that the ALJ neglected to consider his 1995 failed suicide attempt. (Doc. 8, p. 11-12). The ALJ discussed the plaintiff's depressive mood, including the above mentioned suicide attempt and

14

concluded that, after undergoing psychotherapy coupled with psychotropic medication, the plaintiff's depression was under control. (TR. 18).

Finally, the plaintiff argues that the ALJ's determination that he was able to perform a significant range of light work is not supported by the medical evidence because in order to be capable of performing light work an individual must also be able to do a good deal of walking or standing, and use both arms and legs for pushing and pulling of controls. (Doc. 8, p. 12-13). However, "light work," as described on the regulations, require only "some" pushing/pulling activities, 20 C.F.R. § 404.1567(b). According to his doctors, the plaintiff had limitations performing repetitive pushing and pulling activities, he was not barred from performing all push/pull activity. (Doc. 9, p. 20).

Similarly, the plaintiff's argument that the ALJ "misapplied" the testimony of the VE is not supported by the record. The VE testified that if the plaintiff's testimony regarding his symptoms and limitations was accepted, he would not be capable of performing any work. (Tr. 52; Doc. 8, p. 5-6). Since the ALJ found the plaintiff's testimony regarding his subjective complaints not totally credible, he was not require to consider the VE's response that takes into account the plaintiff's subjective symptoms. See Craigie v. Bowen, 835 F. 2d 56 (3d Cir. 1987) (Doc. 9, p. 21).

The plaintiff also argues that the ALJ rejected his testimony regarding his subjective complaints based on a single line in a 1995 psychiatric assessment where the plaintiff stated that he was capable of taking care of his daughter after his 1992 injury. (Doc. 8, p. 6). However, according to the

15

plaintiff's own statements, he took care of his daughter all day while his wife worked outside the home. (TR. 209). In addition, in rejecting portions of the plaintiff's testimony relating to his subjective symptoms, the ALJ cited to portions of the medical record which contradicts the plaintiff's claim of total disability. Specifically, the ALJ referred to the physical therapist's opinion that, since the plaintiff is right hand dominant, he can perform most activities of daily living symptoms-free; and the evidence indicating that the plaintiff's ROM for the left shoulder, elbow and wrist is within normal limits. (TR. 18).

The plaintiff's statement that since he was fifty-three (53) years old at the time of the hearing, the ALJ was precluded from considering sedentary jobs that he could perform is incorrect. (Doc. 8, p. 14). A claimant's age at the time of the hearing is irrelevant, it is his age during the relevant time period under consideration that the ALJ is required to factor into his decision making process as prescribed by the regulations. See 20 C.F.R. § 404.1563©). As stated above, the plaintiff was forty-four years old at the alleged disability onset date in 1992 and forty-nine (49) on his date last insured in 1997, a "younger person" under the regulations at all relevant times. Thus, the ALJ could have limited the plaintiff to sedentary work as well regardless of his age at the time of the hearing. (Doc. 9, p. 12).

It is not the duty of this court to resolve conflicts in the medical evidence. See Richardson v. Perales, 402 U.S. 389, 399 (1971). When reviewing the denial of DIB, we must determine whether the denial is supported by substantial evidence.   Brown v. Bowen, 845 F.2d 1211, 1213 (3rd Cir. 1988);

Mason v. Shalala, 994 F.2d 1058 (3rd Cir. 1993). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552 (1988); Hartranft v. Apfel, 181 F.3d 358, 360. (3d Cir. 1999). The plaintiff fails to direct out attention to medical evidence that would warrant disturbance of the ALJ's findings.

**V. Conclusion**

Based upon the evidence of record as described above, we find that substantial evidence supports the Commissioner's non-disability determination. **IT IS THEREFORE RECOMMENDED THAT** the plaintiff's appeal of the decision of the Commissioner of Social Security (Doc. No. 1) be **DENIED.**

                                      s/ Malachy E. Mannion

                                      **MALACHY E. MANNION**
                                      **United States Magistrate Judge**

**Dated: JUNE 21, 2005**

O:\shared\REPORTS\2004 Reports\04-1429DRAFT.wpd