UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD AUGUGLIARO,          :
                             :CIVIL ACTION NO. 3:04-CV-1429
         Plaintiff,      :
                             :(JUDGE CONABOY)
         v.               :(Magistrate Judge Mannion)
                             :
JO ANNE B. BARNHART,        :
Commissioner of Social Security,  :
                             :
         Defendant.      :

---

**MEMORANDUM AND ORDER**

Here we consider Magistrate Judge Malachy E. Mannion's Report
and Recommendation, (Doc. 10), concerning Plaintiff's appeal of
Defendant's denial of his application for Disability Insurance
Benefits ("DIB"), under Title II of the Social Security Act
("Act"), 42 U.S.C. §§ 410-433, filed on July 1, 2004, (Doc. 1).
The Magistrate Judge reviewed the record pursuant to 42 U.S.C. §
405(g) and recommends denial of this appeal based on his
determination that substantial evidence supports Defendant's
decision that Plaintiff was not disabled within the meaning of the
Act during the relevant time period.  (Doc. 10.)

Plaintiff filed objections to the Magistrate Judge's Report
and Recommendation on July 5, 2005,(Doc. 11-1), accompanied by a
supporting brief, (Doc. 11-2).  Defendant filed a responsive brief
on July 11, 2005, (Doc. 12).  Therefore this matter is now ripe for
disposition.

Because Plaintiff has filed objections to the recommended

1

disposition, (Doc. 11-1), we will make a *de novo* determination regarding the matters to which Plaintiff has objected.  *See* 28 U.S.C. § 636(b)(1)(C).

After a thorough examination of the record, we find Plaintiff's objections without merit, adopt the Magistrate Judge's Report and Recommendation, and deny Plaintiff's appeal.

## I. Background

Plaintiff was born on July 14, 1948. (R. at 75.)  He was fifty-four years old at the time of the Social Security hearing on April 3, 2003.  (R. at 15, 28.)  He is a high school graduate who worked as a union electrician for twenty-two years.  He stopped working in January of 1992 when he reportedly re-injured his left shoulder in a fall at work.  (R. at 15, 32-34.)  At the time of the hearing, he was divorced with one daughter (born in 1991) who lived with her mother.  (R. at 37.)

Plaintiff filed an application for Social Security Disability benefits on April 2, 2002, alleging disability since January 30, 1992, due to left shoulder, right leg, and lower back pain as well as depression.[1]  His claim was denied on June 14, 2002. (R. at 54-55.)  Plaintiff then requested a hearing which was held before an Administrative Law Judge ("ALJ") on April 3, 2003.  Plaintiff was represented at the hearing by the same counsel who represents him

---

[1]  The procedural portion of this Background is derived from the Magistrate Judge's Report and Recommendation, (Doc. 10 at 1-3), unless otherwise noted.

on this appeal.  In addition to Plaintiff's testimony, the ALJ

heard testimony of James Paddock, a vocational expert ("VE").

Plaintiff was denied benefits pursuant to the ALJ's decision of May

5, 2003.

Following the ALJ's denial, Plaintiff filed a request for

review.  On May 5, 2004, the Appeals Council concluded there was no

basis upon which to grant Plaintiff's request for review.

Therefore, the ALJ's decision stood as the final decision of the

Commissioner.  As noted previously, the Commissioner's denial of

benefits is the subject of this appeal which Plaintiff filed on

July 1, 2004.  (Doc. 1.)

## II. Disability Determination

The Commissioner is required to use a five-step analysis to

determine whether a claimant is disabled.[2]  It is necessary for the

---

[2]   "Disability" is defined as the "inability to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected to
result in death or which has lasted or can be expected to last for
a continuous period of not less that 12 months . . . ."  42 U.S.C.
§ 423(d)(1)(A).  The Act further provides that an individual is
disabled

> only if his physical or mental impairment or
> impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of
> substantial gainful work which exists in the
> national economy, regardless of whether such
> work exists in the immediate area in which he
> lives, or whether a specific job vacancy exists
> for him, or whether he would be hired if he
> applied for work.

Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 C.F.R. §§ 416.920(a)-(f); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

In this case, at step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset of disability.  (R. at 15.)  At step two, the ALJ found Plaintiff has residuals of shoulder surgery and back pain impairments that in combination are severe within the meaning of the regulations.  (R.

---

42 U.S.C. § 423(d)(2)(A).

at 16.)  At step three, the ALJ gave special considerations to
Sections 1.04 A and 12.04 of the Listings and found that
Plaintiff's impairments did not meet a listed impairment. (*Id.*)  At
step four, the ALJ found that, for the period in question,
Plaintiff had the residual functional capacity for light to
sedentary work with restrictions.  The ALJ found Plaintiff not
disabled at step five.

The ALJ based his decision upon the following findings:

1. The claimant meets the nondisability
   requirements for a period of disability
   and Disability Insurance Benefits set
   forth in Section 216(I) of the Social
   Security Act and is insured for benefits
   through December 31, 1997.

2. The claimant has not engaged in
   substantial gainful activity since the
   alleged onset of disability.

3. The claimant has a combination of
   impairments considered "severe" based on
   the requirements in the Regulations 20
   CFR § 404.1520(b).

4. These medically determinable impairments
   do not meet or medically equal one of
   the listed impairments in Appendix 1,
   Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's
   allegations regarding his limitations
   are not totally credible for the reasons
   set forth in the body of the decision.

6. The undersigned has carefully considered
   all of the medical opinions in the
   record regarding the severity of the
   claimant's impairments (20 CFR §
   404.1527).

5

7. During the period January, 1992 through December 31, 1997, the claimant had the residual functional capacity for light or sedentary work as defined at the hearing provided that the left arm was not used for any overhead work and there was no requirement for lifting more than 5 pounds with the left hand and arm.

8. The claimant was unable to perform any of his past relevant work (20 CFR § 404.1565).

9. During the period, the claimant was a "younger individual between the ages of 45 and 49" (20 CFR § 404.1563).

10. The claimant has a "high school education" (20 CFR § 404.1564).

11. Transferability of skills is not an issue in this case (20 CFR § 414.1568).

12. During the period January, 1992 through December 31, 1997, the claimant had the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).

13. Although the claimant's exertional limitations did not allow him to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there were a significant number of jobs in the national economy that he could have performed.

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time during the period January, 1992 through December 31, 1997 (20 CFR § 404.1520(f)).

(R. at 20-21.)

The Magistrate Judge found that the ALJ's determination is

6

supported by substantial evidence and recommends denial of Plaintiff's appeal. (Doc. 10.) As noted previously, Plaintiff's objections to the Magistrate Judge's Report and Recommendation, (Doc. 11), are the subject of this Memorandum.

### III. Evidence of Record

The Magistrate Judge thoroughly reviewed the record and the following is his summary of pertinent evidence.

> The plaintiff was born on July 14, 1948 (TR. 19, 75, 105), and has a high school education. (TR. 15, 113). He suffered work related injuries to his left shoulder in 1980, and again in 1992, resulting in two surgical procedures to repair a rotator cuff tear. (TR. 34). His past relevant work consists of work as a union electrician for a period of approximately twenty-two (22) years; his work involved construction and heavy lifting. At age forty-four (44), in January of 1992, the plaintiff stopped working after re-injuring his left shoulder at work. (TR. 15, 33, 108).
>
> The Plaintiff initially filed a claim for DIB in 1994. That application was apparently denied at the administrative level and he took no further appeal. TR. 34; Doc. 8, p. 3). The plaintiff reapplied in 1995 but was, once again, denied. At the hearing, the plaintiff testified that he did not appeal the denial of the 1995 application because he was served with divorce papers around that time and he "just dropped everything." (TR. 34).
>
> Plaintiff filed the DIB application that is the subject matter of this appeal, on April 2, 2002. He seeks disability benefits from January 30, 1992. The plaintiff's last date insured for DIB purposes was December of 1997, therefore, the plaintiff must establish that he became

disabled on or prior to that date in order to be entitled to benefits. (TR. 33). He has been declared partially, permanently disabled by the Workman's Compensation Board on July 6, 1994, and receives monthly benefits from that agency. (TR. 34, 168; Doc. 8, p. 2).

Plaintiff was treated by William Krywicki, M.D., an orthopedic surgeon, from February 6, 1992, through May 12, 1995. (TR. 177-87, 195-96). Dr. Krywicki performed surgery on the Plaintiff's left shoulder in August of 1992, and again on July 1, 1999. (TR. 35; Doc. 8, p. 2).

On December 3, 1992, the plaintiff's strength was sixty percent compared to normal and his Range of Motion (ROM) had improved since the first surgery. (TR. 183). Dr. Krywicki opined that any type of activity above shoulder levels was going to be difficult. (TR. 182). On May 6, 1993, the plaintiff was doing "quite well" from the standpoint of ROM, but his endurance strength was extremely limited, and his tolerance was no more than five minutes above head level. (TR. 181). He had not shown any major strength gain with the rehabilitation program. (TR. 180). On December 29, 1993, Dr. Krywicki opined that the plaintiff was disabled from the type of work that he had been doing, that Plaintiff was disabled from any work at chest level or above activities, that his work capacity would be more of a sedentary nature, and that the plaintiff would be unable to do repetitive push/pull activities. (TR. 178-179).

On June 22, 1994, and again on May 12, 1995, Dr. Krywicki opined that the plaintiff was restricted to five pounds for chest level or above and repeated push, pull, or overhead activities are limited. (TR. 178, 195, Doc. 8, p. 2-3). Dr. Krywicki also opined that the plaintiff's restrictions were "permanent in nature." (TR. 178). On

8

May 12, 1995, Dr. Krywicki again stated that
the plaintiff could not return to his work
as an electrician. (TR. 196).

A February 1, 1995, MRI of the left
shoulder showed status post rotator cuff
tear repair. There were mild degenerative
changes of the acromioclavicular joint and
humeral head (TR. 176), but it did not show
anything out of the ordinary for someone
that had undergone shoulder surgery. (TR.
195). On March 7, 1995, Plaintiff had
seventy percent strength in his arm. (TR.
177).

Plaintiff was treated by Ish Kumar,
M.D., a neurologist, from July 8, 1994,
through April 11, 1995. (TR. 188-92). His
ROM and power of the extremities were
normal, straight leg raising test (SLR) was
mildly positive on the right side at forty
five degrees, and he had mild lumbar
tenderness and spasm. (TR. 191). Dr. Kumar
reviewed MRI films of the lumbar spine and
diagnosed bilateral lumbar radiculopathy
with degenerative disc disease and
mild disc herniation at L5-S1. (TR. 191).
Dr. Kumar discussed treatment options with
the plaintiff, including surgery. However,
since the plaintiff's pain was mild, Dr.
Kumar advised him to continue on back
strengthening exercises. (TR. 191).

On March 2, 1995, the plaintiff
complained of severe pain in the low back
and both lower extremities, especially the
right one. (TR. 189). SLR was positive
bilaterally at thirty five degrees, ROM and
power were grossly normal, but there was
marked lumbar tenderness and spasm. (TR.
189). Dr. Kumar recommended another MRI. On
April 11, 1995, Dr. Kumar reported that the
plaintiff had disc degeneration from L3 to
S1 and a bulging disc at L5-S1 that mildly
encroached on the thecal sac. (TR. 188,
193). There was a probable hemangioma in the
body of L2. (TR. 188). The physician
discussed treatment options with the

plaintiff and recommended continued back strengthening exercises. (TR. 188).

On July 6, 1994, Bernard Perlman, M.D., a Worker's Compensation Examining Physician, concluded that the plaintiff was permanently, partially disabled. (TR. 168). The plaintiff had mild atrophy of his left deltoid, mild abduction, internal and external rotation defects of the left shoulder. (TR.168).

On September 7, 1995, Cilla Marfatia, P.T., conducted a functional capacity evaluation. (TR. 203-08). Plaintiff's left shoulder pain was the main factor limiting his ability to lift but he was mostly symptom free when performing activities below shoulder level. His ROM was within functional limits for the left shoulder, elbow, and waist, and he was right dominant, therefore, he was still able to perform most activities of daily living symptom free. (TR. 208).

On October 4, 1995, the plaintiff reported that he took an overdose of the antidepressant Zoloft in a failed attempt to commit suicide. However, after taking the pills, he immediately called his estranged wife to inform her what he had done. He was admitted to the hospital where he reported that he had been diagnosed with depression a month earlier for which he had been prescribed Zoloft. (TR. 209, 211; Doc. 8, p. 2). The plaintiff was alert, oriented, his speech was relevant and coherent, and his sensorium was grossly intact with average intelligence but his mood was depressed. Although the plaintiff's [sic] apparently tried to commit suicide, he denied suicidal ideas, plan or intent. (TR. 209-210). Toxicology reports returned negative for any drugs, alcohol or narcotic, except for Benzodiazepine. (TR. 211). The plaintiff was diagnosed with adjustment disorder with depressed mood. (TR. 210). He was discharged on October 12, 1995, and his prognosis was

"good;" he was advised to participate in individual therapy sessions. (TR. 219-220).

The plaintiff was treated at the Department of Veterans Affairs' hospital from October 3, 1997, through September 16, 2002. (TR. 221-371, 386-502). Hospital notes dated March 22, 1996, show that the plaintiff reported to be more angry than depressed due to his marital problems and that he was not taking any medication for his depression. (TR. 474). His affect was deemed "appropriate and angry" and, although depressed, he was not severely depressed; he was spontaneous, relevant and coherent. The plaintiff was given an appointment at the Mental Hygiene Clinic and was allowed to sign himself out on the same day. (TR.474).

Plaintiff continued treatment for his physical impairments at the Veteran's hospital; on September 4, 1997, x-rays of his left shoulder showed no abnormalities but an MRI was recommended. (TR. 497). An October 3, 1997, MRI of the left shoulder showed an abnormality compatible with a rotator cuff tear. (TR. 496). On July 1, 1999, the plaintiff underwent surgery on his left shoulder. (TR. 223).

On June 10, 2002, J. J. Kowalski, M.D., prepared a Psychiatric Review Technique Report (PRTF). (TR. 372-85). He concluded that there was insufficient evidence in the record to determine if Plaintiff had any mental impairments. (TR. 372).

Subsequent to the administrative hearing, Plaintiff submitted a June 16, 2003, office note from Dr. Francisco Garcia, a psychiatrist, and a May 30, 2003, Department of Veterans Affairs' rating decision. (TR. 508-512).

Dr. Garcia diagnosed the plaintiff with post traumatic stress disorder (PTSD),

11

service connected[3]. The plaintiff had reported that he broke a small table with a baseball bat when he was notified that had been turned down again on his DIB application. (TR. 508). The Veterans' Affairs granted the plaintiff's request for service connection for PTSD, with an evaluation of fifty percent, effective August 2, 2002. (TR. 509).

In his application for benefits, the plaintiff stated that he lives alone in an apartment, can take care of his personal needs, pays his own bills, takes out the trash, carries two grocery bags at a time, and takes his daughter to the movies and the park. (TR. 122-24).

At the time of the administrative hearing before the ALJ, the plaintiff was fifty-four (54) years old. (TR. 32). He testified that in 1980, he fell off a scaffold and injured his left shoulder. He stated that his injured shoulder was "destroyed" because he worked with a torn rotor cuff for the twelve-year period between 1980 and 1992 . (TR. 38). He also stated that he suffered from an injury to his right knee and has developed sciatica in his low back with radiculopathy and has right shoulder tendinitis from overuse. (TR. 39).

The plaintiff further testified that he is right-hand dominant and can only lift five pounds with his left arm. (TR. 37-38). He stated that he has tendinitis in his right shoulder because he uses his right arm for everything. (TR. 39). Plaintiff drives, can walk one block, sit for one half hour, and stand for one half hour. (TR. 39-40). He testified that he was taking several

---

[3]   The plaintiff had served in the Marine Corps for two years during the Vietnam Era and and it was possible that he was suffering from PSTD from exposure to traumatic stressors in military service during the war (TR. 510).

12

medications, including Etopdolac,
Cyclobenzariame, Propxyphere, Lisinopril,
Buspirome and Extra Strength Tylenol. (TR.
35; Doc. 8, p. 3). He stated that he gets
light headed and dizzy from his medications.
(TR. 44).[4]

The VE testified that Plaintiff's past
work was considered heavy and skilled. (TR.
49). After graduating from high school in
1970, the plaintiff had joined the
electricians union and studied at a union
trade school for five years. (TR. 32). The
ALJ asked the VE to assume a hypothetical
individual with Plaintiff's age, education,
and vocational characteristics who was
limited to light and/or sedentary work,
provided that the left arm was not used for
any overhead work and there was no
requirement for lifting more than five pounds
with the left hand and arm. (TR. 51). The VE
testified that the hypothetical individual
would be capable of performing the positions
of inspector, cashier, packer, and assembler.
(TR. 51).

(Doc. 10 at 4-11.)

## IV. Discussion

A.   **STANDARD OF REVIEW**

This Court's review of the Commissioner's final decision is

limited to determining whether there is substantial evidence to

support the Commissioner's decision.   42 U.S.C. § 405(g); *Hartranft*

*v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).   A reviewing court is

---

[4] Plaintiff's tendinitis and medication side effects post-
date the expiration of his eligibility period.  (R. at 35-39.)
Similarly, Plaintiff's testimony regarding his limitations referred
primarily to his current status.   He testified that his limitations
and pain have increased since his eligibility expired and.  (*See,*
*e.g.*, R. at 42.)

"bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Plummer*, 186 F.3d at 427 (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). Therefore, we will not set aside the Commissioner's final decision if it is supported by substantial evidence, even if we would have reached different factual conclusions.  *Hartranft*, 181 F.3d at 360 (citing *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .").

B.  **PLAINTIFF'S OBJECTIONS**

Plaintiff identifies four objections to the Magistrate Judge's Report and Recommendation.  (Doc. 11-1.)  He claims the Magistrate Judge erred on the following bases: 1) the Magistrate Judge failed to reverse the ALJ's finding that Plaintiff was not totally credible concerning the severity of his symptoms and the extent of his limitations; 2) the Magistrate Judge failed to consider the totality of the factual evidence; 3) the Magistrate Judge wrongly concluded there was no evidence Plaintiff's condition worsened during the period he was eligible for disability benefits; and 4)

14

the Magistrate Judge failed to note that Plaintiff is at a less advantageous age for making an adjustment to other work.  (Doc. 11-1 at 3-6.)

### 1.   CREDIBILITY

We conclude Plaintiff's objection regarding credibility is without merit.

"Credibility determinations are the province of the ALJ, and only should be disturbed on review if not supported by substantial evidence." *Pysher v. Apfel*, Civ. A. No. 00-1309, 2001 WL 793305, at *3 (E.D. Pa. July 11, 2001) (*citing Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)).  While it is true that testimony regarding subjective pain is entitled to great weight, this tenet applies only when the testimony is supported by competent medical evidence. *See, e.g., Kent v. Schwieker*, 710 F.2d 110, 115 (3d Cir. 1983).  An ALJ may reject a claim of disabling pain where he has considered the claim of subjective pain and specifies his reasons for finding the claimant less than credible, supporting his conclusions with medical evidence in the record. *See, e.g., Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).

Plaintiff' argument is based on the following assertions: 1) the ALJ makes no specific reference to any evidence supporting his conclusion that Plaintiff is not fully credible, (Doc. 11-1 at 3; Doc. 11-2 at 6); 2) the ALJ misconstrued Dr. Krywicki's records which indicate that he would be unable to do repetitive push pull

activities even at a sedentary level, (Doc. 11-1 at 3); and 3) a functional capacity evaluation performed on September 11, 1995, supports Plaintiff's complaints of pain, (Doc. 11-2 at 6-7).

We conclude that Plaintiff's objection is without merit because the ALJ Judge fulfilled his obligation in considering Plaintiff's subjective complaints.  Contrary to Plaintiff's contention, the ALJ specified his reasons for finding Plaintiff less than credible and supported his conclusions with medical evidence in the record.  *See Matullo* at 245.  The ALJ acknowledged there was evidence which could cause Plaintiff pain and limitations but found that, overall, the evidence did not support Plaintiff's testimony concerning the severity of symptoms and the extent of limitations.  (R. at 18.)  The ALJ cited medical evidence and noted that the medical record showed that his depression was controlled by medication and none of the treating physicians during the relevant time period expressed the opinion that Plaintiff was totally disabled.  (R. at 18.)  Although Plaintiff derives different conclusions from some of the same evidence cited by the ALJ - Dr. Krywicki's report and Physical Therapist Cilla Marfatia's September 1995 report and evaluation - the ALJ does not incorrectly rely on the cited evidence.

Here the evidence shows that, as Plaintiff argues, his impairments cause him pain.  The ALJ recognizes this, but also considers other evidence, including the fact that none of these

16

doctors opined that Plaintiff was unable to work because of the pain as Plaintiff himself alleges.  Because the ALJ properly performed his role in determining Plaintiff's credibility and the record shows that substantial evidence supports his conclusion, it is not for us to reweigh the evidence or disturb the ALJ's finding on this issue.  *See, e.g., Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

**2.    *TOTALITY OF THE EVIDENCE***

We conclude Plaintiff's objection concerning the Magistrate Judge's failure to consider the totality of the factual evidence is without merit.

In this objection, Plaintiff argues the Magistrate Judge placed improper weight on Plaintiff's acknowledgment that he took care of his daughter after his injury in January of 1992.  (Doc. 11-1 at 4.)  "Plaintiff suggests that this fact alone is not sufficient to sustain the ALJ's credibility determination, as stated by the Magistrate Judge.  The record does not support the statement by the Magistrate Judge that plaintiff cared for his daughter 'all day.'"  (*Id.*)

We do not read the Report and Recommendation to conclude that any single fact supports the ALJ's credibility determination.  (Doc. 10 *passim*.)  In the same paragraph where the Magistrate Judge discusses Plaintiff's care for his daughter, he also discusses other evidence upon which the ALJ relied.  (Doc. 10 at 16.)

Moreover, upon review, our concern is whether the ALJ's determination is based on substantial evidence.  Whether the Magistrate Judge characterized Plaintiff's care for his daughter in precisely the same terms found in the record has no bearing on our conclusion.  As discussed in Section IV(B)(1) above, we find the ALJ's credibility determination meets the substantial evidence standard.

### 3.   *DETERIORATION OF CONDITION*

We conclude Plaintiff's objection regarding evidence of the deterioration of his condition is without merit.

Plaintiff phrases his objection as follows: "The Magistrate Judge erred in finding that there was no evidence Plaintiff's condition continued to worsen during the period of his eligibility for disability benefits from 1992 through 1997."  (Doc. 11-1 at 4.)  In his supportive brief, he states that "[t]he Magistrate Judge suggests the Plaintiff is offering no evidence to suggest that the conditions prohibiting Plaintiff's return to work have progressed."  (Doc. 11-2 at 8.)

Contrary to Plaintiff's assertion, after finding the ALJ had appropriately examined Plaintiff's medical records, the Magistrate Judge simply stated "[t]he plaintiff fails to direct our attention to any portion of the record indicating that the plaintiff's physical impairments had worsened."  (Doc. 10 at 13.)  Plaintiff's initial brief, which is not a model of clarity regarding issue

organization, can be read to point to three areas where the evidence allegedly showed his condition had worsened – December 1997 physical therapy notes, extensive mental health treatment beginning in 1995, and evidence concerning his lumbar spine impairment, (Doc. 8 at 11-12).  Although Plaintiff is correct that he pointed to evidence in support of his assertion, the Magistrate Judge's statement is not necessarily error in that it can be understood to mean that he did not find the evidence persuasive of a worsening condition during the relevant time period.

**More importantly, whether there is evidence to support Plaintiff's assertion is not an issue for our review.  While the record may contain evidence supporting a conclusion different from that of the ALJ, this will not undermine the ALJ's decision provided there is substantial evidence in the record to support the decision.**  *See, e.g., Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The pertinent question regarding Plaintiff's condition is not whether it worsened during the period of eligibility.  Rather, as discussed above, our task is to determine whether the ALJ properly considered the evidence and whether his conclusion that Plaintiff was not disabled within the meaning of the act during the relevant time period is based on substantial evidence.  Here, the ALJ reviewed the evidence pertinent to the relevant time period now cited by Plaintiff and found Plaintiff not disabled.  (*See* R. at

19

14-21.)  He also considered evidence outside the relevant time
period, including the side effects of medications Plaintiff began
taking several years after his eligibility expired.  Contrary to
Plaintiff's inference, an ALJ is under no obligation to explain why
he does not find evidence outside the relevant time period
persuasive of disability, nor is he required to make reference to
each piece of evidence in the record.  *See, e.g., Garcia v.
Commissioner,* 94 Fed. Appx. 935, 940 n.3 (3d Cir. 2004) (not
precedential); *Burnett v. Commissioner*, 220 F.3d 112, 121-22 (3d
Cir. 2000).  Based on our review of the record and the ALJ's
decision, the ALJ properly considered the evidence and based his
decision on substantial evidence.[5]

**4.   *AGE***

Finally, we conclude Plaintiff's objection regarding the
consideration of his age is without merit.

Plaintiff maintains that because he was forty-nine years of
age at the expiration of his disability and is limited to sedentary
work, more consideration should have been given to his age in
determining whether he would have difficulty adjusting or adapting
to sedentary work.  (Doc. 11-2 at 11.)

---

[5] We recognize an added difficulty in this case in that it
was in April 2003 that the ALJ had to try to ascertain Plaintiff's
condition from January 1992 through December 1997.  This difficulty
cannot be attributed to Defendant because Plaintiff did not file
the application under consideration until April 2002 – over four
years after his eligibility expired and six years after his
previous claim was denied.  *See supra* p. 8.

Inability to engage in substantial gainful activity would be indicated where an individual who is restricted to sedentary work because of a severe medically determinable impairment lacks special skills or experience relevant to sedentary work, lacks educational qualifications applicable to most sedentary work (e.g. has limited education or less) and the individual's age, though not necessarily advanced, is a factor which significantly limits vocational adaptability.  Section 201.00(c) of Appendix 2, Suppart P, Part 404.

First, the ALJ found Plaintiff could perform "light or sedentary work" with restrictions.  (R. at 18.)  However, even if limited to sedentary work, Plaintiff's education prevents application of the cited provision.  What will be considered a "limited education" is defined in the regulations: "[w]e generally consider that a 7th grade through 11th grade level of formal education is a limited education."  20 C.F.R. § 404.1564(b)(3).  As a high school graduate, Plaintiff cannot avail himself of the provision cited above.  Therefore, his claim that his education was not properly considered is without merit.

### V. Conclusion

For the reasons discussed above, we adopt the Magistrate Judge's Report and Recommendation, (Doc. 10), and deny Plaintiff's instant appeal.  An appropriate Order follows.


S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: August 3, 2005_____

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD AUGUGLIARO,                      :
                                         :CIVIL ACTION NO. 3:04-CV-1429
          Plaintiff,                     :
                                         :(JUDGE CONABOY)
          v.                             :(Magistrate Judge Mannion)
                                         :
JO ANNE B. BARNHART,                     :
Commissioner of Social Security,         :
                                         :
          Defendant.                     :

_____

**ORDER**

   **AND NOW, THIS 3rd DAY OF AUGUST 2005, FOR THE REASONS**

**DISCUSSED IN THE ACCOMPANYING MEMORANDUM, THE FOLLOWING ORDER IS**

**ENTERED:**

1.   The Magistrate Judge's Report and Recommendation, (Doc.
     10), is **ADOPTED**;

2.   Plaintiff's appeal of the Commissioner's decision, (Doc.
     1), is **DENIED**;

3.   The Clerk of Court is directed to close this case.


                              S/Richard P. Conaboy
                              RICHARD P. CONABOY
                              United States District Judge